IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION FOR THE
GALLUP-MCKINLEY COUNTY SCHOOLS,

        Plaintiff,

v.                                       No. CV-2015-00604 KG/WPL

HENRY HENDERSON, ELEANOR SHIRLEY
FORMER MEMBERS OF THE NAVAJO
NATION SUPREME COURT, RICHIE NEZ,
CASEY WATCHMAN, BEN SMITH,
BLAINE WILSON, FORMER MEMBERS OF
THE NAVAJO NATION LABOR COMMISSION,
EUGENE KIRK, REYNOLD R. LEE,
FORMER MEMBERS OF THE OFFICE OF
NAVAJO LABOR RELATIONS, AND
JOHN AND JANE DOES.

        Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO THE NAVAJO NATION DEFENDANTS' MOTION TO DISMISS**

Plaintiff Board of Education for the Gallup-McKinley County Schools ("School District"), by and through its undersigned counsel, responds in opposition to the Navajo Nation Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (*Doc 18*) as follows:

**I.   INTRODUCTION**

This is an action by the School District for a declaratory judgment and for injunctive relief involving an employment matter between the School District and its former employee Henry Henderson ("Henderson"), in which the Navajo Nation Supreme Court (the "NNSC")

held that the Navajo Nation Labor Commission (the "NNLC"), the Office of Navajo Labor Relations (the "ONLR") purportedly have authority to assert regulatory and adjudicatory jurisdiction and control over the School District's State governmental functions.  The School District seeks (a) a declaratory judgment declaring that the Navajo Nation Defendants lack jurisdiction over a New Mexico public school district's governmental and employment decisions and practices conducted on the Navajo Nation when such public school districts are fulfilling their state responsibilities, duties and functions to provide a public education for all children of the State of New Mexico and (b) injunctive relief to bar further prosecution of any such matters before the administrative agencies or courts of the Navajo Nation because of their lack of jurisdiction.

The NNSC held, in the case of *Henry Henderson vs. Gallup McKinley County Schools*, NNSC No. SC-CV-38-11, that the Navajo Nation can assert authority and jurisdiction over the School District.  The School District exhausted its tribal remedies once it obtained a ruling on the issue of jurisdiction from the NNSC, which held that the Navajo Nation has personal jurisdiction over the School District and subject matter jurisdiction over State employment matters involving Henderson.  *See* (*Doc 1-10*).  The Final Judgment in *Henry Henderson vs. Gallup McKinley County Schools*, NNSC No. SC-CV-38-11 was entered by the NNSC on June 15, 2015.  *See* (*Doc 1-11*).

The School District is a political subdivision of the State of New Mexico organized for the purpose of operating and maintaining an educational program for the school age children residing within its boundaries.  *See* N.M. Stat. Ann. § 22-1-2(R) (2003); N.M. Stat. Ann. § 22-5-4 (2003).  As part of New Mexico's constitutional mandate to provide a public education for all New Mexico citizens, the School District operates within the boundaries of the Navajo Nation.

*See* N.M. Stat. Ann. § 22-1-4(A) (2003); *see also San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 35 (1973).  The School District's central administrative offices are located in Gallup, New Mexico, and the Navajo Nation Defendants are located on the Navajo Nation in Window Rock, Arizona.

The Navajo Nation Defendants now challenge the subject matter jurisdiction of the Court to address the issue of whether the administrative agencies of the Navajo Nation can assert jurisdiction over a New Mexico public school district performing its governmental functions as a political subdivision of the State of New Mexico.  For the reasons set forth below, this Court has subject matter jurisdiction and the ability to provide a remedy requiring the entry of an order denying the Motion to Dismiss (*Doc 18*).

## II.   ARGUMENT

### A.   LEGAL STANDARDS

As set forth by the Tenth Circuit in the case of  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995), the standard of review for a RULE 12(b)(1) motion is as follows:

> Generally, RULE 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990).  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.  *Id.*
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.

*Id.*  The Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under FED.R.CIV.P. 12(b)(1).  *Id.; Wheeler v.*

*Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987), *cert. denied,* 484 U.S. 986 (1987). In such cases, a district court's reference to evidence outside the pleadings does not convert the motion to a motion for summary judgment under RULE 56. *Wheeler,* 825 F .2d at 259 n. 5. Moreover, "[t]he burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

The doctrine of standing is an essential element of the "case or controversy" requirement of a federal court's jurisdiction as described by Article III of the United States Constitution. U.S. Const. art. III, § 2, cl. 1. *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662–63 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In order to show standing, the School District in bringing this case must demonstrate: first, that it has sustained an injury "in fact;" second, that there is a causal connection between the School District's injury and the conduct of the Navajo Nation Defendants about which the School District complains; and finally, that the School District's injury is likely to be redressed by a favorable decision of the court. *See Florida General Contractors*, 508 U.S. at 662–65.

The final element of Article III standing, "redressible injury", mandates that a federal court's jurisdiction is limited to those legal controversies which are "on-going" or, stated another way, which are **not** for some reason "moot." *Honig v. Doe*, 484 U.S. 305, 318–19 (1988) (emphasis in original). A controversy will be held to be "moot" where the issues presented by the parties are no longer "live" issues, or where the plaintiff in the case no longer claims any interest in the lawsuit's outcome. *Murphy v. Hunt,* 455 U.S. 478, 481 (1982).

The fact that this action is in part for a declaratory judgment does not affect the standing analysis. *See Bishop v. Smith*, 760 F.3d 1070, 1091 (10th Cir.) *cert. denied*, 135 S. Ct. 271, 190

4

L. Ed. 2d 139 (2014).  "Like any lawsuit, a declaratory-judgment action must meet Article III's standing criteria, including redressability."  *Bishop*, 760 F.3d at 1091; *see City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1263–64 (10th Cir. 2011).  "As part of the redressability requirement, a declaratory-judgment action must be brought against a defendant who can, if ordered to do so, remedy the alleged injury."  *Id.*, *citing Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 892 (10th Cir. 2011).  The Declaratory Judgment Act provides that a federal court may issue a declaratory judgment in "a case of actual controversy ... whether or not further relief is sought."  28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).  "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'controversies' that are justiciable under Article III."  *MedImmune,* 549 U.S. at 126 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).  The test, here, is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127.  An actual controversy must exist at all stages of the Court's review.  *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975).

    **B.**    **REDRESSABILITY AND MOOTNESS**

The School District has standing to bring this lawsuit, and the case is not moot.  The Constitution limits the exercise of the Court's power to "cases" and "controversies."  U.S. Const. art. III, § 2.  "Thus, 'without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'"  *WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1181 (10th Cir. 2012), *quoting Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008)).  The Court must examine two aspects of Article III jurisdiction: standing—in

particular, its redressability prong—and constitutional mootness.  *See WildEarth Guardians*, 690 F.3d at 1181-82.

### 1. Redressability

The Court has the authority to provide a remedy through the entry of a declaratory judgment that the Navajo Nation's courts and employment agencies do not have jurisdiction over the School District as a New Mexico public school and an injunction is required to prevent their assertion of jurisdiction.  *See Red Mesa Unified School Dist., et al., v. Yellowhair, et al.*, 2010 WL 3855183, at *3 (D. Ariz. September 28, 2010) (the court determined that the Navajo Nation had no regulatory or adjudicative jurisdiction over state public school districts on the Navajo Nation).  "Standing doctrine addresses whether, at the inception of the litigation, the plaintiff had suffered a concrete injury that could be redressed by action of the court."  *WildEarth Guardians*, 690 F.3d at 1182, *quoting Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1263 (10th Cir. 2004).  "Standing is determined as of the time the action is brought." *Id.*, *quoting Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006).  "To establish Article III standing, the plaintiff bears the burden of demonstrating the following three elements: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) **a likelihood that a favorable decision will redress the injury.**"  *WildEarth Guardians*, 690 F.3d at 1182, *quoting Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (emphasis in original).  "A plaintiff must demonstrate standing separately for each form of relief sought."  *Id.*, *quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

In order to seek prospective relief, as is the case here, the School District must be "suffering a continuing injury or be under a real and immediate threat of being injured in the future."  *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004), *quoted in Hill v.*

*Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1257 (D.N.M. 2011). "The threatened injury must be 'certainly impending' and not merely speculative." *Tandy*, 380 F.3d at 1284.

In order "[t]o demonstrate redressability, a party must show that a favorable court judgment is likely to relieve the party's injury." *Id.*, *quoting Nichols (Two Cases)*, 656 F.3d at 1264. "The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Id.*, *quoting Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). "In addition, the plaintiff must demonstrate that a favorable judgment would have a binding legal effect." *WildEarth Guardians*, 690 F.3d at 1182, *citing Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012).

In this case, it appears that the Navajo Nation Defendants concede that the School District suffered an "injury in fact" during the pendency of the Henderson case litigated before the Navajo Nation courts, but now allege in their Motion to Dismiss that since the matter has been resolved by the NNSC, there is no longer an "injury in fact" to support the subject matter jurisdiction of this Court. *See Doc 18* at 3-4. However, the resolution of the Henderson claims may have rendered the case subject to the doctrine of mootness, but it did not destroy the School District's standing to seek federal judicial relief. To seek prospective relief, the School District must be under a real and immediate threat of being injured in the future. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983). Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *Id.* at 102. Here, the School District remains in a "real and immediate threat of being injured in the future[]" persevering its standing to bring this action. *Tandy*, 380 F.3d at 1283.

The Motion to Dismiss (*Doc 18*) does not assert that the Henderson matter was a one-of-a kind administrative matter or that it was the exercise of a seldom used discretionary function of a

7

tribal agency or government official with the Navajo Nation. The Navajo agencies involved were created to enforce the Navajo Preference in Employment Act ("NPEA") and that enforcement authority is real and not speculative or hypothetical and has resulted in similar litigation in another federal court.

Defendant ONLR is a department within the Division of Human Resources of the Navajo Nation originally established under 15 N.N.C. § 201, to "monitor and enforce the Navajo Preference in Employment Act", "to act as an administrative agency for matters relating to the enforcement of employment preference in hiring, recruitment, promotion, layoff, termination, transfer and other areas of employment", and "to gather information from employers, employees, labor organizations, and governmental agencies relating to employment, compensation, and working conditions". 15 N.N.C. § 202.

Defendant NNLC was established to "act as the administrative hearing body under the [Navajo Preference in Employment Act]", and to "conduct and hold administrative hearings in accordance with Navajo Nation laws concerning Navajo employment preference". 15 N.N.C. § 302. As such, another employee of the School District, who believes the Navajo Preference in Employment Act applies to him or her could seek a remedy within the tribal administrative agencies now that the NNSC has held that the Navajo Nation has jurisdiction over state public schools located within its boundaries. *See Doc 1-10* at 3. Thus, the NNSC's assertion of jurisdiction over the School District, as to employee claims under the NPEA against a political subdivision of the State of New Mexico, violates the School District's rights, privileges, and immunities guaranteed to the School District by the Constitution, treaties, and laws of the United States and the State of New Mexico. *See Macarthur v. San Juan County,* 497 F.3d 1057, 1073-74 (10th Cir. 2007).

In *Macarthur*, the Tenth Circuit held that the Navajo Nation did not possess regulatory authority over employment related claims by terminated employees of a special health services district that was a political subdivision of the state of Utah. *Id. See Red Mesa Unified School Dist., et al., v. Yellowhair, et al.*, 2010 WL 3855183, at *3 (D. Ariz. September 28, 2010) (the district court determined that the Navajo Nation had no regulatory or adjudicative jurisdiction over state public school districts to enforce employment claims under the NPEA); *see also Window Rock Unified Sch. Dist. v. Reeves*, 2013 WL 1149706, at *5 (D. Ariz. March 19, 2013) (the district court holds that the NNLC has no regulatory and adjudicative authority to review personnel decisions made by state public school districts finding that "[t]he dispositive factor is instead the fact that the state's considerable interest, arising from outside of the reservation, in providing for a general and uniform public education is very much implicated."). Thus, the School District has satisfied the "injury in fact" requirement and the requirement that there is a connection between the Navajo Nation Defendants' enforcement of their laws and the prospective injury to the School District necessary for standing before this Court.

The School District also satisfies the redressability requirement. In order to show standing, the School District's injury must be likely to be redressed by a favorable decision of the Court. *See Nichols (Two Cases)*, 656 F.3d at 1264 ("To demonstrate redressability, a party must show that a favorable court judgment is likely to relieve the party's injury."); *Jordan,* 654 F.3d at 1019 (standing requires a showing that there is "a likelihood that a favorable decision will redress the injury."); *see also Graves v. McElderry*, 946 F. Supp. 1569, 1576 (W.D. Okla. 1996). Here, the School District seeks the remedy already provided by the federal district court in Arizona in barring the Navajo Nation's assertion of jurisdiction over all employment claims and of regulatory and adjudicatory authority arising from state public school districts located on

the Navajo Nation providing for a general and uniform public education. *See Window Rock Unified Sch. Dist. v. Reeves*, 2013 WL 1149706, at *5 (D. Ariz. March 19, 2013) (the district court grants summary judgment and enters a declaratory judgment that the NNLC has no regulatory and adjudicative authority to review personnel decisions made by state public school districts); *Red Mesa Unified School Dist., et al., v. Yellowhair, et al.*, 2010 WL 3855183, at *3 (D. Ariz. September 28, 2010) (the district court grants summary judgment and enters a declaratory judgment that the Navajo Nation had no regulatory or adjudicative jurisdiction over state public school districts to enforce employment claims under the NPEA). In addition, there is likelihood that a similar declaratory judgment would remedy the School District's prospective injury. *See Macarthur,* 497 F.3d at 1073-74 (the Navajo Nation did not possess regulatory authority over employment related claims by terminated employees of a special health services district that was a political subdivision of the state of Utah). Therefore, the School District has satisfied the redressability requirement and has standing to bring this action.

    **2.**     <u>**Mootness**</u>

The School District's action is not moot, and the Navajo Nation Defendants agree. *See Doc 18* at 5. "Mootness, like standing, is a jurisdictional doctrine originating in Article III's 'case' or 'controversy' language." *WildEarth Guardians*, 690 F.3d at 1182, *quoting DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "An action is moot where the controversy is no longer live, or the parties lack a personal stake in its outcome." *Whitfield v. City of Ridgeland*, 876 F. Supp. 2d 779, 785 (S.D. Miss. 2012), *citing Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). "Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation; thus, courts have sometimes described mootness as 'the doctrine of standing set in a

time frame.'" *WildEarth Guardians*, 690 F.3d at 1182, *quoting Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). "This description, however, 'is not comprehensive.'" *Id.*, *quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Mootness differs from standing in two significant ways. "First, mootness doctrine is subject to an exception that sometimes allows courts to retain jurisdiction even if one or more of the elements of standing is lost; namely, when 'defendant's allegedly unlawful activity is capable of repetition, yet evading review.'" *WildEarth Guardians*, 690 F.3d at 1182-83, *citing Laidlaw*, 528 U.S. at 190*; see Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (there are exceptions to the operation of the mootness doctrine, one of which applies to "the class of controversies capable of repetition, yet evading review.") (quoting *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774 (1978)). "Outside the class action context, the 'capable of repetition, yet evading review' exception applies only in exceptional situations where the following two circumstances are simultaneously present: '(1) The challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Whitfield*, 876 F. Supp. 2d at 786, *quoting Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). "This doctrine 'applies only when repetition is likely to embroil the same parties to the dispute.'" *Id.*, *quoting Robinson v. City of Chicago*, 868 F.2d 959, 967 (7th Cir. 1989). That is the case here as another employee of the School District, who believes the Navajo Preference in Employment Act applies to him or her could seek a remedy within the tribal administrative agencies now that the NNSC has held that the Navajo Nation has jurisdiction over state public schools located within its boundaries. *See Doc 1-10* at 3. Thus, the Henderson case is subject to

repetition involving the same parties as to tribal jurisdiction, and it is disingenuous[1] for the Navajo Defendants to assert that School District's standing is somehow extinguished by virtue of a judgment by the NNSC, while the School District was exhausting its tribal remedies on the Henderson claims. *Doc 18* at 5-6. *See Tillett v. Lujan*, 931 F.2d 636, 640 (10th Cir. 1991) ("a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies"); *see also United States ex rel. Kishell v. Turtle Mountain Housing Auth.*, 816 F.2d 1273, 1276 (8th Cir. 1987) ("a federal court should stay its hand until tribal remedies are exhausted and the tribal court has had a full opportunity to determine its own jurisdiction"). Thus, this case is not moot, and the Motion to Dismiss (*Doc 18*) should be denied.

Second, while the School District bears the burden of demonstrating standing, the Navajo Nation Defendants bear the burden of proving mootness. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000). Here, the Navajo Nation Defendants state that their Motion to Dismiss is not premised on any argument of mootness. *Doc 18* at 5-6. Therefore, the School District has standing, the case is not moot, and the Motion to Dismiss (*Doc 18*) should be denied.

## III.   CONCLUSION

WHEREFORE Plaintiff Board of Education for the Gallup-McKinley County Schools respectfully moves this Court for an order denying the Navajo Nation Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (*Doc 18*) for the reasons set forth above and requests any other relief the Court feels is just, appropriate, and consistent therewith.

---

[1] If this matter is not resolved by this Court and the School District is later brought before one of the Navajo Nation Defendants, they will in all likelihood claim that the School District has waived any arguments regarding lack of jurisdiction.

                               Respectfully submitted,
                               CUDDY & McCARTHY, LLP


By:  */s/ Andrew M. Sanchez*
       ANDREW M. SANCHEZ
       7770 Jefferson Street N.E., Suite 102
       Albuquerque, New Mexico  87109-5912
       (505) 888-1335
       (505) 888-1369 (facsimile)
       **asanchez@cuddymccarthy.com**

       **ATTORNEYS FOR BOARD OF EDUCATION FOR THE GALLUP-MCKINLEY COUNTY SCHOOLS**


I HEREBY CERTIFY that on the 3rd day of September, 2015, the foregoing pleading was electronically filed through the Court's CM/ECF system, which caused the foregoing parties or counsel of record to be served by electronic means as more reflected on the Notice of Electronic Filing and by means of the U.S. Mail:

Paul Spruhan
Assistant Attorney General
Navajo Nation Dept. of Justice
**ATTORNEYS FOR DEFENDANT**
Post Office Box 2010
Window Rock, Arizona  86515-2010
Telephone: (928) 871-6937
Email: pspruhan@nndoj.org

David R. Jordan
The Law Offices of David R. Jordan, P.C.
Attorney for Henry Henderson
PO Box 840
Gallup, NM  87305-0840
Telephone: (505) 863-2205
Email:  david@jordanlegal.com

*electronically filed on September 3, 2015*
ANDREW M. SANCHEZ