IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION FOR THE
GALLUP-MCKINLEY COUNTY SCHOOLS,

        Plaintiff,

vs.                                      Civ. No. 15-604 KG/WPL

HENRY HENDERSON, ELEANOR SHIRLEY,
FORMER MEMBERS OF THE NAVAJO
NATION SUPREME COURT, RICHIE NEZ,
CASEY WATCHMAN, BEN SMITH,
BLAINE WILSON, FORMER MEMBERS OF
THE NAVAJO NATION LABOR COMMISSION,
EUGENE KIRK, REYNOLD R. LEE,
FORMER MEMBERS OF THE OFFICE OF
NAVAJO LABOR RELATIONS, AND
JOHN AND JANE DOES,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon (1) the Motion to Dismiss for Lack of Subject

Matter Jurisdiction (Motion to Dismiss) filed on August 18, 2015, by Defendants Eleanor

Shirley, Richie Nez, Casey Watchman, Ben Smith, Blaine Wilson, Eugene Kirk, Reynold R.

Lee, former members of the Navajo Nation Supreme Court (NNSC), former members of the

Navajo Nation Labor Commission (NNLC), and former members of the Office of Navajo Labor

Relations (ONLR) (collectively, Defendants); and (2) Plaintiff's Motion and Memorandum Brief

for Leave of Court to File First Amended Complaint (Motion to Amend) filed on September 3,

2015.  (Docs. 18 and 22).  Defendants argue in the Motion to Dismiss that Plaintiff lacks Article

III standing to pursue this lawsuit and that the Court, therefore, lacks subject matter jurisdiction.

Plaintiff seeks to amend its complaint to add a new plaintiff and claims.  Both motions are now

fully briefed.  (Docs. 19, 20, 23, and 24).  Having considered the Motion to Dismiss, the Motion
to Amend, and all of the pertinent briefing, the Court grants the Motion to Dismiss and denies
the Motion to Amend.

*A.  Background*

This lawsuit arises from Plaintiff's decision not to renew Defendant Henry Henderson's
contract to be the principal of Navajo Pine High School.  (Doc. 1) at ¶¶ 12, 18.  Henderson is a
member of the Navajo Nation and Navajo Pine High School is located on the Navajo
Reservation.  *Id.* at ¶¶ 5-6.  Plaintiff is a political subdivision of the State of New Mexico
organized to provide education to all New Mexico children within its boundary.  *Id.* at ¶ 5.

After Plaintiff notified Henderson of its decision not to renew his contract, Henderson
resigned and Plaintiff rescinded its Notice of Termination.  *Id.* at ¶ 18.  Henderson subsequently
filed a charge with the ONLR claiming Plaintiff violated the Navajo Preference in Employment
Act (NPEA), and then he filed a complaint with the NNLC.  *Id.* at ¶ 19.  The NNLC granted
Plaintiff's motion to dismiss the complaint because Henderson resigned from his position.  *Id.* at
¶ 21.

Next, Henderson appealed the NNLC's decision to the NNSC.  The NNSC held that it
had subject matter jurisdiction over the matter and affirmed the NNLC's dismissal of
Henderson's claims.  *Id.* at ¶¶ 27 and 28.  As a result of its decision, the NNSC entered a final
judgment terminating the case.  *Id.* at ¶ 29.

Plaintiff now seeks (1) prospective relief to bar future Navajo Nation adjudications of
Plaintiff's employment decisions, and (2) a declaratory judgment which declares that the Navajo
Nation lacks jurisdiction to adjudicate Plaintiff's employment decisions.

B. *Discussion*

    *1. The Motion to Dismiss:  Article III Standing*

    "To establish Article III standing, a plaintiff must show that: (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).  In this case, Defendants only argue that Plaintiff has not met the injury in fact requirement.

    *a. The Claim for Prospective Relief*

    In a lawsuit seeking prospective relief, the plaintiff meets the injury in fact requirement by showing that he is "under a real and immediate threat of being injured in the future." *Id.* As the Tenth Circuit explained,

> [p]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.  The threatened injury must be "certainly impending" and not merely speculative.  A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction.

*Id.* at 1283-84 (citations omitted).  Moreover, a plaintiff can show that an injury is likely to be repeated in the future by demonstrating that when the injury occurred the defendant had a written policy from which the injury arose.  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004).  In that scenario, "there is an implicit likelihood of [the harm's] repetition in the immediate future."  *Id.* (citation omitted).

    Plaintiff contends that it is imminent that the Navajo Nation will assert jurisdiction over Plaintiff's employment decisions in future cases.  Plaintiff asserts that the Navajo Nation's past exercise of jurisdiction to enforce the NPEA in other state public school employment cases shows that the Navajo Nation will continue to do so.  The Court notes that federal courts have

determined that the Navajo Nation does not have jurisdiction over other state public school boards' employment decisions  *See Window Rock Unified School Dist. v.* Reeves, 2013 WL 1149706 (D. Ariz.); *Red Mesa Unified School Dist. v. Yellowhair*, 2010 WL 3855183 (D. Ariz.), *cited with approval in Belcourt Public School Dist. v. Davis*, 786 F.3d 653, 659 (8th Cir. 2015) and *Fort Yates Public School Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 669 (8th Cir. 2015).  Plaintiff also argues that enforcement of the NPEA by Defendants, like enforcement of a written policy, shows that the Navajo Nation will likely continue to assert jurisdiction over Plaintiff in future employment cases.

Defendants contend, on the other hand, that Plaintiff has not shown that it is "under a real and immediate threat of being injured in the future."  Defendants note that state public school boards, like Plaintiff, enter into federally-approved leases of Navajo trust land to provide land upon which to locate schools.  According to Defendants, and undisputed by Plaintiff, "[l]eases negotiated at different times may have significantly different provisions on jurisdiction," including consent to tribal jurisdiction.  (Doc. 23) at 8.  *See Bailon v. Central Cons. School Dist. No. 22*, 8 Nav. R. 501 (Nav. Sup. Ct. 2004) (because language in trust land lease did not waive application of NPEA, Navajo Nation had jurisdiction over state public school board's employment decision).

Plaintiff's arguments in favor of Article III standing to bring its prospective relief claim trouble the Court for several reasons.  First, before one can be said to suffer from a "real and immediate threat of being injured in the future," one must demonstrate that the future injury is a concrete and particularized injury, not a conjectural or hypothetical injury.  Here, Plaintiff fails to explain how being subject to Navajo Nation jurisdiction, as opposed to being subject to federal jurisdiction under the Equal Employment Opportunity Commission or to state jurisdiction under

4

the New Mexico Human Rights Commission, constitutes a concrete and particularized injury. Instead, Plaintiff provides general conjectural or hypothetical assertions of harm such as "costs of defense, potential damages, … the imposition of injunctive relief requiring changes in their employment practices inconsistent with State law[, and] … inconsistent judgments and requirements by having three separate sovereigns (federal, state, and tribal) all asserting jurisdiction over their employment practices and actions." (Doc. 22) at 5. Second, although Plaintiff has demonstrated that the Navajo Nation has in the past exercised jurisdiction over state public school board employment decisions, Plaintiff does not describe how the future imposition of Navajo Nation jurisdiction on Plaintiff is not merely speculative when one considers how specific individual trust land leases may impact the issue of tribal jurisdiction. Finally, even if the Navajo Nation is tasked with enforcing the NPEA, Plaintiff has not demonstrated how the mere authority to enforce the NPEA necessarily implies a likelihood that the Navajo Nation will choose to exercise jurisdiction over Plaintiff in the immediate future, especially when federal courts have already determined that the Navajo Nation lacks jurisdiction in cases similar to this one. Under these circumstances, the Court cannot conclude that Plaintiff is "under a real and immediate threat of being injured in the future." Plaintiff, therefore, lacks Article III standing to bring the prospective relief claim.

### b. The Claim for Declaratory Judgment

In the context of a declaratory judgment action, a plaintiff has Article III standing if "the dispute [is] 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it [is] 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)

(citation omitted).  Put differently, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* (citation omitted).  "[H]ypothetical disagreements about the law are not enough to invoke the jurisdiction of federal courts."  *Baser v. State Farm Mut. Auto. Ins. Co.*, 560 Fed. Appx. 802, 803 (10th Cir. 2014).

Plaintiff apparently also applies its arguments in support of standing on the prospective relief claim to the standing issue pertaining to the declaratory judgment claim.  The Court concedes that during the Henderson tribal litigation, the parties did have adverse legal interests regarding the issue of jurisdiction.  However, when the NNSC terminated that litigation, the legal controversy surrounding jurisdiction was no longer sufficiently immediate and real to warrant the issuance of a declaratory judgment.  Rather, the issue of jurisdiction is now a hypothetical legal disagreement which cannot form the basis for Article III standing.  Consequently, Plaintiff lacks Article III standing to bring the declaratory judgment claim.  In sum, Plaintiff does not have standing to pursue this lawsuit and the Court, thus, lacks subject matter jurisdiction.

### 2. *The Motion to Amend*

Plaintiff seeks to add a new plaintiff and new claims in its proposed amended complaint. Federal Rule of Civil Procedure 15(a), however, does not allow a party without standing to amend a complaint to add new plaintiffs and claims.  *Fed. Recovery Servs., Inc. v. United States,* 72 F.3d 447, 453 (5th Cir.1995) ("Rule 15 does not allow a party to amend to create jurisdiction where none actually existed.") (quoting *Aetna Cas. & Sur. Co. v. Hillman,* 796 F.2d 770, 776 (5th Cir. 1986)); *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 144 (2d Cir. 1994) (where case is not justiciable in federal court and subject to dismissal, district court did not

abuse discretion in denying motion to amend); *Summit Office Park, Inc. v. United States Steel Corp.,* 639 F.2d 1278, 1282 (5th Cir.1981) ("where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.").  Hence, the Court denies the Motion to Amend.

IT IS ORDERED that

1.  the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 18) is granted;

2.  this lawsuit will be dismissed without prejudice; and

3.  Plaintiff's Motion and Memorandum Brief for Leave of Court to File First Amended Complaint (Doc. 22) is denied.

UNITED STATES DISTRICT JUDGE